UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO:  04-0465 (DWF/JSM)

      Plaintiff,

v.                                           <u>REPORT AND RECOMMENDATION</u>

ROLAND EMANUEL NELSON

      Defendant.


JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned on March 1, 2005 upon Defendant Roland Nelson's Motion to Suppress Evidence Seized at 3626 McKinley Street [Docket No. 13].[1]

Assistant United States Attorney Robert Lewis appeared on behalf of the Government; James Ostgard appeared on behalf of defendant Ronald Emanuel Nelson, who was personally present.  After considering the pleadings and post-hearing submissions, the Court ordered an evidentiary hearing to elicit the testimony of Investigator Joseph Guy for the purpose of addressing the Government's reliance on <u>United States v. Leon</u>, 468 U.S. 897 (1984) in support of its opposition to defendant's motion.  This hearing occurred on March 16,

---

[1]     Defendant's Motions for Disclosure of Impeaching and Exculpatory Evidence [Docket No. 21], for Disclosure of Information Relating to Experts [Docket No. 22], for Disclosure of Rule 404 Evidence [Docket No. 23], and to Produce Grand Jury Transcripts of Motions Hearing Witnesses [Docket No. 24], and the Government's Motion for Discovery [Docket No. 19] are addressed in a separate Order issued by this Court.

2005.   At this hearing, counsel for both parties objected to the Court taking additional testimony from Investigator Guy and therefore, no such testimony was taken and the matter was taken under advisement.

Based upon the pleadings, exhibits submitted at the hearing, pre-hearing submissions, and post-hearing submissions, it is recommended that Defendant Roland Nelson's Motion to Suppress Evidence Seized at 3626 McKinley Street [Docket No. 13] be **GRANTED**.

## I. FACTUAL BACKGROUND

An Indictment was returned against defendant Ronald Nelson ("defendant" or "Nelson") charging him with five counts of Mail Fraud, on or about April 2001 to the present, in violation of 18 U.S.C. § 1341 and four counts of Money Laundering, on or about May 19, 2003, June 16, 2003, June 18, 2003, and July 1, 2003, in violation of 18 U.S.C. § 1956(a).

There is one warrant in dispute.  The warrant  focused on the premises located at 3626 McKinley St. NE, Minneapolis, MN.  At the hearing on the pretrial motions and subsequent hearing before the Court, the parties stipulated that this issue should be decided solely based on the four corners of the search warrant application.  As such, the only issue presented to the Court in connection with defendant's motion is whether probable cause existed on the face of the search warrant application, and if not, whether the good faith exception articulated in United States v. Leon, 468 U.S. 897 (1984) renders the search valid.

The facts underlying the present motion are as follows: During the course of the investigation of defendant, Investigator Guy applied for a search warrant of

the residence located at 3626 McKinley St. NE, Minneapolis, MN and any garages and out buildings associated with the address.

The search warrant application described the property sought by the warrant as follows:

1.    Computer, monitor, printer, connecting cables and all related peripherals; i.e., scanners, external hard drives, rewriteable drives, zip drives, to include CD's, diskettes, systems' disks, hardware and software manuals.

2.    Any and all computer hardware devices to create, convert, display, transmit, and analyze magnetic or electronic impulses or data.

3.    Electronic "smart" typewriter with memory card(s).

4.    Any and all business records, documents, papers, spreadsheets, advertisements and promotional materials regarding investing, investments and businesses to invest in.

5.    Any and all documents, records, bank records relating to Lakota Enterprizes and/or the Lakota Corporation.

6.    Any and all documents relating to the identity of victims or potential victims of investment fraud.

7.    Bank records for two TCF checking accounts #9852110307, #8851894691.

8.    Any bank records, checks, cancelled checks believed to be related to ROLLIE'S investment activities.

9.    Any and all documents related to Lakota Enterprises or the Lakota Corporation.

The relevant portion of Investigator Guy's affidavit, accompanying the search warrant, described the basis for the warrant as follows:

From approximately July 2001 to date, ROLAND "ROLLIE" NELSON has run an investment scam that has defrauded numerous victims out of more than $100,000.00.

SHORT SUMMARY REGARDING HOW ROLLIE WORKED HIS SCAM

Upon meeting persons whom ROLLIE believes could be potential investors, he portrays himself as . . .

- the Chief of the Mdwakanton Sioux tribe in Shakopee, for which he received an annual salary of $300,000.00.
- a businessman and entrepreneur.
- a philanthropist and multi-millionaire.

When soliciting investment funds, ROLLIE'S sales pitch generally included some or all of the following untruths:

- He personally manages the Tribe's investment program.
- Being the Chief, he has the ability to offer investors a very unique opportunity. That being, if they choose to invest with him, he will pool their money with Tribal funds currently being invested in the research and development of hydrogen-fuel-cell motors (used to power the next generation of cars and buses) and the creation and proliferation of hydrogen-fuel-cell refueling stations.
- He will double their initial investment by matching it dollar-for-dollar with Tribal funds. (i.e.; a $100 investment would automatically become a $200 investment.)
- Investments will earn 2.5% interest per month, or approximately 25% interest annually.
- Investors won't have to pay taxes on their earnings, because the Tribe isn't subject to State or Federal tax laws.
- Investors can withdraw their money at anytime. However, some investors were told that they couldn't touch their money for at least a year.

After investing with ROLLIE, some of his "clients" called him asking to withdraw some or all of their money. When confronted with these situations, ROLLIE attempted to deflect his victims' inquiries by saying things such as:

I'm in Nevada.

I'm in Florida.

I'm on the North Shore, I can't get at your money.

I'm in the hospital, I'll have someone take care of you.

I mailed you a check, you should have gotten it by now.

I already had the money transferred to your account.

Now is not a good time to take your money out.

When his strategy of deception and misdirection failed him, ROLLIE simply attempted to avoid further contact with his victims.  To date, only one family of three investors had recovered their money from ROLLIE.  However, they were only able to do so after they employed a veiled threat of impending physical violence.

A number of disgruntled investors mailed ROLLIE certified demands for payment.  However, ROLLIE has yet to comply with any such demand.

Beginning in January '03, some of ROLLIE'S victims began filing police reports.  This was when your Affiant became involved in the case.

Your Affiant's investigation into ROLLIE'S investment activities found that he has  No Affiliation  whatsoever with the Mdwakanton Sioux Community.  Specifically:

- he is not a Tribe member.
- he is not the Tribe's Chief.
- he is not a Tribal council member.
- he has nothing to do with the Tribe's investments and/or finances.

While running his investment scam, ROLLIE took on a helper, TOD O'DONOGHUE.   TOD worked for ROLLIE from approximately November 2002 to

February 2003.   (*Your Affiant investigated TOD'S association with ROLLIE, and he believes that while TOD worked for ROLLIE, he was unaware of ROLLIE'S illegal activities.  Infact* [sic]*, TOD also fell prey to ROLLIE'S investment scam.)*

While TOD was associated with ROLLIE, he worked at ROLLIE'S residence on numerous occasions. (*TOD identified ROLLIE'S residence as being a single family dwelling located at 3626 McKinley St. NE in Mpls.*)

According to TOD, ROLLIE has an office in the house that contains his computer system, a smart typewriter (*a smart typewriter, defined as a typewriter with a memory card.*)   and numerous boxes full of paper records and documents.

Your Affiant believes that the computer and the typewriter and the boxes full of documents contain evidence of ROLLIE'S investment scam.  i.e.:

- Names, addresses, phone numbers of additional investment fraud victims who have yet to be identified.
- Bank records for two TCF checking accounts that ROLLIE had used during the course of his investment activities:
  1. Lakota Enterprises Corporation, acct. # 9852110307, ROLLIE set up the business Lakota Enterprises as a front for his investment activities and now a defunct discount-shopping-card scam that he failed to keep in business.
  2. ROLLIE'S personal check account, acct. # #8851894691, ROLLIE deposited some of his clients' investment checks into this account.
- Information concerning the generation of the Capitol Venture Notes that ROLLIE gave to his victims, as a receipt for their investment.
- Documents, data, items referencing and/or referring to hydrogen-fuel-cells and investing in hydrogen-fuel-cells.
- Documents, data, items related additional investments that ROLLIE has tried to solicit funds

for: i.e.; a business that convets [sic] used tires into a material that can be used to pave roads and line the cargo boxes on pickup trucks.

Your Affiant checked with the US Postal Inspectors office, and found that as of 6-6-03, ROLLIE has been receiving mail at 3626 McKinley St. NE in Minneapolis.

On June 9, 2003, the search warrant was issued by Hennepin County District Court Judge Steven A. Pihlaja and was executed by Investigator Joseph Guy. Among other evidence, Investigator Guy found in the search of defendant's residence client files and notebooks, TCF bank receipts and bankcards, disks, names and phone numbers, the Certificate of Incorporation of Lakota Enterprises, and Czeschin's Oil & Energy Investment Report.

## II. DISCUSSION

On March 1, 2005, defendant brought his motion to suppress the evidence seized during the execution of the search warrant, arguing that there was insufficient probable cause on the face of the search warrant application to support the issuance of the warrant, and that the application sought permission for a general search. In its written response, the Government did not contend that there was sufficient probable cause stated on the face of the warrant, but rather asserted that the search warrant met the requirements of United States v. Leon, 468 U.S. 897 (1984). See Government's Supplemental Response to Defendant's Motion to Suppress Evidence, at 2. After reviewing the written submissions of the parties, the Court determined that an evidentiary hearing was required to elicit the testimony of Investigator Guy for the purpose of addressing whether the good faith exception articulated in Leon applied to this case. At the

hearing on March 16, 2005, both defendant and the Government objected to the

evidentiary hearing and therefore, the Court did not hear the testimony of

Investigator Guy.[2]  At the hearing, the Court also asked the Government whether

---

[2]      Both defendant and the Government objected to the evidentiary hearing
because they believed objective reasonableness of the officer was the only issue
as to whether <u>Leon</u> applied, and therefore the Court was confined to an
examination of the four corners of the officer's affidavit.  In this regard, defendant
cited to the Court the case of <u>United States v. Helton</u>, 314 F. 3d 812, 824 (6th
Cir. 2002) (finding that "the objective reasonableness determination does not
examine the subjective states of mind of law enforcement officers, rather it
inquires 'whether a reasonably well trained officer would have known that the
search was illegal despite the magistrate's decision'") (quoting <u>Leon</u>, 468 U.S. at
923 n.23).  The Government cited to the Court the cases of  <u>United States v.
Marts</u>, 986 F.2d 1216 (8th Cir. 1993) and <u>United States v. Erichsen</u>, No. 04-
40083-JAR, 2005 WL 466210 (D. Kan. Feb. 11, 2005).  At the hearing, the Court
informed counsel for the parties that while it is true that that the Court must
determine whether the officer had an objectively reasonable basis for executing a
defective warrant, in making this determination the Court believed that Eighth
Circuit jurisprudence permitted the Court to consider additional information
known to the officer, but not included in the affidavit.  In this regard, the Court
referred counsel to <u>United States v. Marion</u>, 238 F.3d 965, 969 (8th Cir. 2001)
("When assessing the objective [reasonableness] of police officers executing a
warrant, we 'must look to the totality of the circumstances,' including any
information known to the officers but not presented to the issuing judge."); <u>U.S. v.
Simpkins</u>, 914 F.2d 1054, 1057 (8th Cir. 1990) (finding that in assessing the
objective good faith of the officers executing the warrant, the court "'must look to
the totality of the circumstances,' including any information known to the officers
but not presented to the issuing judge.") (quoting <u>United States v. White</u>, 890
F.2d 1413, 1419 (8th Cir.1989) (citations omitted)); <u>United States v. Martin</u>, 833
F.2d 752, 755 (8th Cir. 1987) ("[W]hen assessing good faith we can and must
look to the totality of the circumstances including what Officer Powers knew but
did not include in his affidavit.").  Even after being presented with this authority,
and an explanation from the Court that it wanted to avoid the situation described
<u>United States v. Martin</u>, 297 F. 3d 1308, 1311-12 (11th Cir. 2002)—where the
Magistrate Judge granted defendant's motion to suppress evidence, finding that
the four corners of the affidavit accompanying the warrant did not establish
probable cause or the application of the <u>Leon</u> good faith exception; the
Government objected to the finding that the <u>Leon</u> good faith exception did not
apply and requested an evidentiary hearing to supplement the record; the
Magistrate Judge held the evidentiary hearing; and after receiving testimony of
the affiant that was not contained in his affidavit, concluded that the good faith

it was conceding that the affidavit accompanying the search warrant lacked probable cause, as it had not addressed this issue in its Supplemental Response to Defendant's Motion to Suppress Evidence.  The Government responded that while it had focused solely on the application of <u>Leon</u> its supplemental brief, it was not conceding the affidavit lacked probable cause.

Because the Government clarified that it is not conceding that the affidavit lacked probable cause, the Court will first address that issue and then, if necessary, the application of <u>Leon</u> to this motion.

Nelson argues that the affidavit lacked probable cause because the issuing judge had no way to independently assess the grounds for probable cause, and could do no more than ratify the opinion of Investigator Guy that there was probable cause for the search.

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  <u>United States v. Fladten</u>, 230 F.3d 1083, 1085 (8th Cir. 2000).

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given <u>all the circumstances set forth in the</u>

---

exception did apply—the Government still objected to additional testimony from Investigator Guy.

<u>affidavit</u>. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238 (emphasis added).  In reviewing this decision of the issuing court, the duty of this Court is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed.  <u>Id</u>. at 238-39 (citation omitted).

In this case, the contents of the search warrant application and supporting affidavit did not provide probable cause for the search of 3626 McKinley St. NE. The affidavit contains no basis for determining how Investigator Guy came upon information contained within his affidavit regarding the investment scam— whether by hearsay, directly from the victims, confidential informants, his own investigation or through his own experience—much less any information attesting to the reliability of the information.  Instead, the affidavit presented nothing more than a conclusory summary of the alleged investment scam.  In this regard, the affidavit did not provide any information for the issuing judge to evaluate the affiant's assertions such as where or from whom the officer received the information, the identification of the victims of the alleged investment scam, or what the officer did to investigate the alleged crime (<u>e.g.</u>, reviewed police reports from specific victims, interviewed specific victims, obtained information from a confidential informant, checked records form the Mdwakanton Sioux Community, or acted as a "potential client").  Therefore, the affidavit does not present the substance or detail required to give an issuing judge a substantial basis for concluding that probable cause existed for conducting the search.  <u>See</u> <u>Grand</u>

Jury Proceedings v. Young, 716 F.2d 493, 501 (8th Cir. 1983) (holding that the affidavit before the issuing magistrate judge did not have sufficient information to find probable cause to search the premises of defendant where the affiant did not indicate how the FBI came upon certain information, stated conclusions and failed to provide sufficient detail regarding the circumstances of the alleged intimidating tactics, identification of the victim, and some corroboration that the property had been turned over to the defendant).  While Investigator Guy may have believed that defendant was engaged in an investment scam, and that evidence of this crime would be found at defendant's home at 3626 McKinley St. NE, it was incumbent upon the officer to provide the issuing judge with adequate information for the judge to independently evaluate the basis for that belief. Here, given the lack of supporting information, there was no way for the issuing judge to test the veracity of Investigator Guy's beliefs, and on that basis this Court finds that the warrant to search defendant's home was not supported by probable cause.

Having determined that the affidavit lacked probable cause, the Court will now analyze whether the officer acted in good faith under Leon by relying on the warrant issued by Judge Piflaja.

In Leon, the court stated that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'"  Leon, 468 U.S. at 922 (citations omitted).  However, the Leon Court noted that there are certain instances when

"the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence." <u>Martin</u>, 833 F.2d at 755; <u>Leon</u>, 468 U.S. at 922-23. "When a police officer acts in an objectively reasonable manner in reliance on a subsequently invalidated search warrant, there is no rational reason for suppressing the fruits of the search." <u>Martin</u>, 833 F.2d at 755. The Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." <u>Leon</u>, 468 U.S. at 923 n.23.

The <u>Leon</u> Court found four instances when suppression remained appropriate. First, suppression is appropriate "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." <u>Leon</u>, 468 U.S. at 923. Second, suppression is appropriate "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant." <u>Id.</u> Third, the court found that an officer would not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" <u>Id.</u> (quoting <u>Brown v. Illinois</u>, 422 U.S. 590, at 610-611, (Powell, J., concurring in part). Finally, the court found that "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e.,

in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Id.  See also, Marion, 238 F.3d at 969 (discussing four situations identified in Leon in which an officer's reliance on a warrant would be unreasonable); Simpkins, 914 F.2d at 1057 (same).

"The government bears the burden of establishing that the good-faith exception to the federal exclusionary rule should apply in a particular case." U.S. v. Koons, No. CR00-3041-MWB, 2001 WL 34008498, at *5 (N.D. Iowa April 26, 2001) (citing Leon, 468 U.S. at 924) ("When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time."), aff'd, 300 F.3d 985 (8th Cir. 2002).

Nelson submits that the third exception of Leon pertains to his situation and therefore, the evidence against him should be suppressed on that basis. See Letter dated March 15, 2005 from James E. Ostgard to Court, at 1.  In this regard, Nelson contends that where, as here, there are only conclusory statements with no supporting underlying facts submitted as probable cause, no reasonable officer could have relied on the warrant.  Id. at 2.

In response, the Government argues that even if the application was not as thorough or well-written as the defendant would like or was not annotated or as detailed as something drafted by a lawyer, the court could understand what the case was about and why the police wanted to conduct a search—Nelson was not being truthful about his business practices, had obtained investments from

third parties, and may have committed fraud.  In this regard, the application listed numerous examples of Nelson's statements to victims and indicated that some investors were refused a return of their money.  The Government also argues that the failure to delineate who reported each statement is not fatal to the warrant.  Further, the Government argues that the place to be searched and the items to be seized were within the realm of reason in this case.  In this regard, the Government asserts that when there is a suspicion of a variety of statements presented to many victims, this sort of application is eminently reasonable.

The Court concludes that based on the record before it, a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization.  It is not enough, as the Government suggests, for an affiant to merely apprise the court about what the case is about and why he wants to conduct a search.  Nor is it enough for an officer to state his belief that a crime has been committed by a defendant and that a particular location is likely to contain evidence of that crime.  A reasonably well-trained officer knows that he needs to provide the basis for his belief—i.e. details regarding his investigation, whether it be records he examined, people he interviewed, confidential informants who provided him with information, or the like—to satisfy the court that it is reasonably probable that the premises he seeks to search will contain evidence of the crime.  Here, Inspector Guy's affidavit is devoid of any such information.  Rather, it presented conclusory statements and indicated no

sources, whether they be people or records, for the court to assess the veracity of the information provided.[3]

For all of these reasons, this Court concludes that the warrant was based on an affidavit with so few indicia of probable cause that an official belief in its validity would be unreasonable, thereby defeating the Government's contention that the good faith exception articulated in <u>Leon</u> should apply.  Having failed to meet its burden to establish the applicability of the <u>Leon</u> exception and having declined the opportunity to present testimony from Investigator Guy, this Court finds that the search and seizure of the evidence of defendant's residence violated the requirements of the Fourth Amendment and the evidence should not be admissible under the good-faith exception to the exclusionary rule.

### III. RECOMMENDATION

For the reasons set forth above, it is recommended that Defendant Roland Nelson's Motion to Suppress Evidence Seized at 3626 McKinley Street [Docket No. 13] be **GRANTED**.

---

[3]     The only possible source mentioned in the affidavit was Tod O'Donoghue, but even as to him, Investigator Guy did not attribute to  O'Donoghue anything meaningful to the probable cause analysis.   All that Investigator Guy stated regarding O'Donoghue was that he was defendant's helper, that O'Donoghue worked at Nelson's residence located at 3626 McKinley St. NE, that O'Donoghue was not aware of Nelson's illegal activities, and that O'Donoghue stated that Nelson's office contained a computer system, smart typewriter, and numerous boxes full of paper records and documents.  Investigator Guy did not even state what the documents were or what relationship, if any, they had to the alleged investment scam.

Dated:          March 18, 2005


                              *s/ Janie S. Mayeron*
                              JANIE S. MAYERON
                              United States Magistrate Judge


       Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and
Recommendation by filing with the Clerk of Court, and by serving upon all parties
on or before **April 5, 2005** a copy of this Report, written objections which
specifically identify the portions of the Report to which objections are made and
the bases for each objection.

       Unless the parties stipulate that the District Court is not required by 28
U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections
made to this Report and Recommendations, the party making the objections
shall timely order and file a complete transcript of the hearing on or before **April
5, 2005**.